IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ANDREW FRYE and ALETA FRYE                                                              PLAINTIFFS

v.                                              Case No. 6:23-cv-6031

JASON WATSON, individually and in his official
capacity as Sheriff for Clark County, Arkansas;
RUSSELL USSERY, individually and in his official
capacity as Deputy Sheriff for Clark County, Arkansas;
JASON WALDRON, individually and in his official
Capacity as Deputy Sheriff for Clark County, Arkansas;
NICK FUNDERBURK, individually and in his official
capacity as an Officer for the Clark County Sheriff's
Department; CLARK COUNTY, ARKANSAS; and
JOHN DOE I, JOHN DOE II, JOHN DOE III, in their
individual and official capacities                                                        DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 35. Plaintiffs have responded in opposition to the motion. ECF No. 44. Defendants have filed a reply. ECF No. 47. The Court finds this matter ripe for consideration.

### I. BACKGROUND

On March 26, 2020, Defendants Nick Funderburk and Josh Waldrum, both deputies with the Clark County Sheriff's Office, were contacted by dispatch regarding Brianna Smith,[1] for whom the Independence County Sheriff's Office ("Independence County") had issued a BOLO (be on the lookout). Dispatch informed Deputies Funderburk and Waldrum that friends of Smith were concerned about her welfare because she had been picked up by an unknown older couple in

---

[1] The exact age of Brianna Smith is not known to the Court; however, the parties seem to agree that she was not a minor on March 26, 2020.

Batesville, Arkansas, and she was not answering her phone. Deputies Funderburk and Waldron were informed that Independence County called Smith's cell phone and that a man had answered. Independence County advised that the man who answered the phone refused to put Smith on the phone, was making threats against Smith, and was stating that he was her "new sugar daddy." Dispatch communicated to Deputies Funderburk and Waldrum that Independence County informed the Clark County Sheriff's Office that "the man" had turned off Smith's phone but that the Snapchat application on her phone had pinged at 121 Sweetgum Road.

Deputies Waldron and Funderburk arrived at 121 Sweetgum Road where they encountered a "Private Property" gate and observed a run-down house nearby. Dispatch then notified Deputies Waldron and Funderburk that Independence County had pinged Smith's phone again on I-30 westbound around Social Hill and that she was traveling in a white Ford Explorer. Upon learning this information, Deputies Waldron and Funderburk headed to I-30 to search for the vehicle. When they reached I-30, Deputy Funderburk noticed a white Ford Explorer in front of him with a Texas license plate, where Smith was reportedly from. Deputy Funderburk followed the Explorer and was notified that a new ping of Smith's phone had hit at Gum Springs, which was near his and the Explorer's location on I-30. At this point, Deputy Funderburk surmised that the Explorer was the suspect vehicle, and he notified dispatch and Deputy Waldron.

As he followed the Explorer, it exited I-30 at a rest area and parked in the parking lot. Moments later, when Deputy Funderburk arrived, both deputies approached the Explorer. Briann Smith, the alleged victim, was in the rear seat on the driver's side. Deputy Funderburk observed that Smith was much younger than the other two occupants of the Explorer, and Deputy Waldron identified Smith from a picture that had been provided to him by dispatch. The other two occupants of the Explorer were later identified as Plaintiffs Andrew Frye and Aleta Frye (the Fryes"). Aleta

2

Frye was in the driver's seat while Andrew Frye was seated in the rear seat on the passenger's side. Deputy Waldron approached the driver's side of the Explorer, and Deputy Funderburk approached the passenger side rear. Both deputies observed Smith crying and Andrew Frye holding Smith by the arm. The deputies instructed the occupants of the vehicle to open the door. Eventually, the door was opened, and, according to both deputies, Smith ran out of the car yelling for help. She then hid behind Deputy Waldron's patrol car.

Aleta Frye exited the vehicle and was arrested. There is a dispute as to whether Andrew Frye refused to exit the Explorer after repeatedly being told to do so and whether he resisted Deputy Waldron's attempts to pull him from the Explorer. Andrew Frye states that he was confused during this encounter. Deputy Waldon tasered Andrew Frye, who was ordered to the ground at gunpoint and then arrested. Deputy Funderburk called for an ambulance to examine Andrew Frye after being tased. The barbs were removed from Frye, and he was briefly treated by paramedics at the scene.

Aleta Frye stated that she repeatedly requested to use the restroom because of her history of colorectal cancer that left her without full bowel control. She states that she was denied access to a restroom for several hours. The Fryes were transported to the Clark County Jail, and Defendant Russell Ussery, a Clark County deputy, transported Smith to the Clark County Sheriff's Office, where she was interviewed.

During transport and in a separate interview, Smith told Investigator Ussery that she was held against her will in the Explorer and that the Fryes would not let her out when she asked them to. She also showed him several bruises and marks on her person that she said were from Andrew Frye grabbing and holding on to her.

According to Andrew Frye, he and Aleta Frye "volunteered to drive to Batesville,

3

Arkansas, to retrieve [Smith] at [her grandmother's] request . . . and used [her grandmother's] vehicle for the trip." ECF No. 43-1, ¶ 6. He stated that Smith knew both he and Aleta, Smith was happy to see them, and Smith voluntarily got into the car with her belongings. ECF No. 43-1, ¶ 6. In their brief, the Fryes acknowledge that "[w]hen the conversation turned toward Andrew [Frye's] opinion that [Smith] enter a rehabilitation facility, she indicated that she did not want to go to a rehabilitation hospital and became somewhat hostile to Andrew [Frye]." ECF No. 44, p. 2.[2]

The day after the incident, on March 27, 2020, Independence County—for whom Clark County had detained and held the Fryes—notified Clark County that it would not be pressing charges against the Fryes. Upon receiving this information, Clark County released the Fryes. No formal charges were ever filed against the Fryes.

On March 20, 2023, the Fryes filed their complaint in this matter, alleging claims under 42 U.S.C. § 1983, the Arkansas Civil Rights Act ("ACRA"), and Arkansas law. In Count One, the Fryes allege that Defendants violated their substantive due process rights because they were deliberately indifferent to the following: (1) failing to address Aleta Frye's immediate need of medical care; (2) failing to contact Smith's parents to determine what had occurred; (3) failing to investigate whether Smith was being held under the influence of addiction to drugs; (4) failing to provide adequate training to sheriff's deputies; and (5) failing to adhere to policies and procedures for the protection of civil and constitutional rights. ECF No. 3, ¶ 41. Under Count One, the Fryes also allege that Defendants failed to protect the Fryes after creating the danger to which they were subjected. ECF No. 3, ¶ 44.

In Count Two, the Fryes contend that their allegations under 42 U.S.C. § 1983 "constitute

---

[2]This statement is not supported by a citation to the record. The Court notes that the Fryes failed to file a "separate, short and concise statement of the material facts as to which [they] contend[] a genuine issue exists to be tried." Local Rule 56.1(c).

4

a violation of the [ACRA]" and that Defendants "acts and omissions constitute a violation of Plaintiff's [ACRA] [r]ights . . . to be free from cruel and unusual punishment." ECF No. 3, ¶ 51. The Fryes are suing all Defendants in both their individual and official capacities. In Count Three, the Fryes allege a state law claim for malicious prosecution.

Defendants argue that they are entitled to summary judgment on all claims. Plaintiff disagrees.

## II.  LEGAL STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2022) (quoting *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007)). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

"The party moving for summary judgment generally has the burden of demonstrating the absence of any genuine issues of material fact." *Zimmerli v. City of Kansas City, Mo.*, 996 F.3d 857, 863 (8th Cir. 2021). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## III.  DISCUSSION

First, the Court will identify specifically what claims are at issue in this case. The Court will then address the official capacity claims. Next, the Court will discuss the individual capacity claims. Finally, the Court will address the state law claims.

### A. Claims at Issue

The parties disagree as to what claims have been pled in this lawsuit. Thus, to determine specifically what claims are at issue, the Court will examine the Complaint along with the parties' briefs related to the summary judgment motion.

### 1. Claims Stated in Complaint

The Complaint includes Three Counts. ECF No. 3. Count One is titled "Violation of Subsidence [sic] of Due Process Claim Under 42 USC § 1983." ECF No. 3, p. 13. Under this claim, Plaintiffs allege that Defendants were deliberately indifferent to the following: (1) that Aleta Frye was in immediate need of medical care; (2) that Defendants "contact the parents of Smith to determine what occurred;" (3) that Defendants "investigate whether . . . Smith was being held under the influence of addiction of drugs to which she had become addicted; (4) "[f]ailing to provide adequate training to sheriff deputies;" and (5) "[f]ailing to adhere to policies and procedures for the protection of civil and constitutional rights." ECF No. 3, ¶ 41. The Fryes also allege that "Defendants' acts and omissions . . . proximately caused their injuries in violation of their rights under the Fifth, Eight[h], and Fourteenth Amendments of the United States Constitution and constitute a violation of 42 U.S.C. § 1983." ECF No. 3, ¶ 41. Further, the Fryes allege that Defendants "failed to protect [the Fryes] after creating the danger to which they were subjected." ECF No. 3, ¶ 43.

Count Two is titled "Violation of Arkansas Civil Rights Act" and alleges that Defendants' actions violated their "Arkansas Constitutional Rights under Article 2 Section 8, that of the right not to be deprived of life liberty, or property without due process of law" and "to be free from cruel and unusual punishment." ECF No. 3, ¶ 51. The Court interprets Count Two as making a cruel and unusual punishment claim under the Arkansas Constitution. Count Three is a malicious

6

prosecution claim under state law that contains some language that could liberally be interpreted as a Fourth Amendment claim alleging a lack of probable cause to arrest the Fryes. ECF No. 3, pp. 16-19.

In their response to the summary judgment motion, the Fryes state that their "complaint asserts claims under 42 U.S.C. § 1983, the Arkansas Civil Rights Act (ACRA), and state tort law" which include claims for "unlawful seizure, excessive force, denial of medical care, and malicious prosecution." ECF No. 44, p. 6. The Court agrees with Plaintiffs that the complaint can be interpreted to contain claims for unlawful seizure under the Fourth Amendment, denial of medical care under the Fourteenth Amendment and Arkansas Constitution, and malicious prosecution under Arkansas law. Defendant addressed all these claims in its Motion for Summary Judgment. ECF No. 35. However, as discussed below, the Court does not agree that the complaint states a claim for excessive force.

### 2. Unpled Claim (Excessive Force)

In their response to the Motion for Summary Judgment, the Fryes claim that Andrew Frye was subjected to excessive force when he was tased by officers. ECF No. 44, pp. 8-9. However, the Complaint does not mention the word "force" or the phrases "use of force" or "excessive force." The Fourth Amendment is mentioned only twice in the Complaint—once in an introductory phrase and once under the heading "Malicious Prosecution by Separate Defendants, Russell Ussery and John Does I and II." ECF No. 3, ¶¶ 1, 61.

The liberal pleading standard under Federal Rule of Civil Procedure 8(a) does not afford a plaintiff with an opportunity to raise new claims at the summary judgment stage. *Wireco Worldgroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 231 F. Supp. 3d 313, 318 (W.D. Mo. 2017). "At the summary judgment stage, the proper procedure for [a] plaintiffs[] to assert a new claim is to

7

amend the complaint in accordance with [Federal Rule of Civil Procedure] 15(a)." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). A Plaintiff cannot "manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004).

In the instant case, the Complaint does not mention the term "excessive force." The Fourth Amendment is mentioned in the Complaint but only to allege that Defendants lacked the probable cause to arrest the Fryes. The Fryes simply did not allege a clam of excessive force in their Complaint. To allow the Fryes to allege that claim for the first time in their summary judgment response would be unfair to Defendants. Accordingly, the Fryes' claims are limited to the allegations raised in their complaint, which are claims for unlawful seizure under the Fourth Amendment, denial of medical care under the Fourteenth Amendment and Arkansas constitution, and malicious prosecution. ECF No. 44, p. 6.

### B. Section 1983 Official Capacity Claims

Plaintiff sues Defendants in their official capacities and individual capacities. "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Here, the suit is against Clark County.

"A political subdivision may not generally be held vicariously liable under section 1983 for the unconstitutional acts of its employes." *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (8th Cir. 1978)). "A political subdivision may be held liable for the unconstitutional acts of its official or employees when those acts implement or execute an unconstitutional policy or custom of the subdivision." *Id.*

Defendants argue that they are entitled to summary judgment on the official capacity claims

because the Fryes have not presented evidence that they were injured because of an unconstitutional Clark County policy. The Fryes do not allege that Clark County's policies were unconstitutional but instead allege that Clark County "had no specific policy or protocol governing the stopping, arresting, or detaining of individuals based on the request of another county." ECF No. 44, p. 15. They also generally allege that Clark County failed to "supervise, train, or discipline deputies following the March 26, 2020 stop," and demonstrated "a disregard for the constitutional rights of those subject to investigatory seizures and force without probable cause." ECF No. 44, p. 16.

Clark County has submitted proof that it had constitutionally appropriate policies in place to govern its deputies. ECF No. 47-1. However, the Fryes have presented no proof that any of these policies are constitutionally inadequate or that this inadequacy was the moving force behind the alleged constitutional violations. The Fryes simply conclude that a "lack of policy" is what caused the alleged constitutional violations while failing to provide any proof in support of their arguments and conclusions.

Accordingly, the Court agrees with Defendants' assertion that the Fryes fail to present any evidence that would indicate liability on the part of Clark County. Thus, the Court finds that summary judgment on all official capacity claims is proper.

### C.  Section 1983 Individual Capacity Claims

Defendants argue that they are entitled to summary judgment on the individual capacity claims based on the application of qualified immunity. Thus, the Court will address the § 1983 individual capacity claims along with the doctrine of qualified immunity. The Court will then address the state law malicious prosecution claim.

### 1. Qualified Immunity

Title 42 U.S.C. § 1983 directs that persons acting under color of law who deprive individuals of their constitutional rights shall be liable to the injured party. However, "[q]ualified immunity provides government officials some protection against suit for civil damages." *Dundon v. Kirchmeier*, 85 4th 1250, 1255 (8th Cir. 2023) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In a § 1983 action, an officer is entitled to qualified immunity unless: (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established." *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 620 (8th Cir. 2023). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). The Court has "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The Supreme Court cautions that lower "courts should think hard, and then think hard again, before deciding a constitutional question that need not be resolved." *Camreta v. Greene*, 563 U.S. 692, 707 (2011).

"Clearly established means that, at the time of the alleged violation, the legal principle must be 'sufficiently clear that every reasonable official would understand that what he is doing is unlawful.'" *Harmon v. Preferred Fam. Healthcare, Inc.*, 125 F.4th 874, 883 (8th Cir. 2025) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63(2018)). "[The] legal principle must have a sufficiently clear foundation in then-existing precedent." *Id.* "This generally requires a plaintiff to point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officers' conduct in the specific circumstances at issue, or, in the absence of binding precedent, to present a robust consensus of cases of persuasive authority constituting settled law." *Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021) (cleaned up). "The law cannot be defined 'at a high

10

level of generality,'" and the plaintiff's proffered precedent 'must be particularized to the facts of the case." *Harmon*, 125 F.4th at 883 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

"The plaintiff bears the burden to show that the violation was clearly established." *Id.* (citing *Est. of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018)). Thus, in the instant case, the Court must grant Defendants qualified immunity unless the Fryes identify "controlling authority or a robust consensus of persuasive authority [that] put[s] the constitutional question 'beyond debate.'" *Dundon*, 85 F.4th at 1255 (quoting *Ashcroft*, 563 U.S. at 741-42). "Showing that a right was clearly established requires identifying controlling precedent with a close correspondence to the particulars of the present case." *Rusness v. Becker Cnty.*, 31 F.4th 606, 615 (8th Cir. 2022). "This means that the right in question must be construed fairly narrowly and that facts in the present case must align with facts in precedent." *Id.*

### 2. Unlawful Seizure (Lack of Probable Cause for Arrest)

The Fryes allege that they were detained for approximately twelve hours without probable cause. ECF No. 44, p. 7. They argue that it is clearly established that "probable cause is required for an arrest." ECF No. 44, p. 10. However, the Fryes have not shown that the alleged constitutional violation was clearly established. The Fryes fail to provide "precedent with sufficiently analogous facts to place . . . Defendants on notice that their conduct fell below a constitutional standard." *Harmon*, 125 F.4th at 884. Instead, the Fryes rely on "broad and generalized legal principles that are insufficiently analogous to the specific facts of this case." *Id.*

The Fryes rely on *Florida v. J.L.*, 529 U.S. 266 (2000). In *Florida*, an anonymous caller reported to law enforcement that a young black male wearing a plaid shirt and standing at a particular bus stop was carrying a gun. 529 U.S. at 268. Two police officers responded to the tip and seized a gun from a sixteen-year-old black male wearing a plaid shirt. *Id.* The Supreme Court

11

held that an anonymous tip that a person is carrying a gun is not, without more, sufficient to justify a police officer's stop and frisk of that person. *Id.* at 270. The Supreme Court noted that the officers' suspicion that the black male was carrying a weapon arose not from their own observations but solely from a call made from an unknown location by an unknown caller. *Id.* at 270-272.

The Fryes also rely on *Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999). In *Kuehl*, the Eighth Circuit established that, when determining whether probable cause exists to support a warrantless arrest, an officer must not disregard exculpatory evidence, even if substantial inculpatory evidence suggests that probable cause exists. *Id.* at 650. Thus, officers have a duty to conduct a reasonably thorough investigation before arresting a suspect. *Id.* The Eighth Circuit held that in *Kuehl*, there was no probable cause to arrest a subject for assault where readily available exculpatory evidence showed that no offense was committed.

Both cases cited by the Fryes represent constitutionally significant general principles: (1) an anonymous call purporting to identify a person who is committing a crime, without more, is not sufficient to justify a police officer's stop and frisk of that person; and (2) officers must not disregard readily available exculpatory evidence at the scene even if substantial inculpatory evidence suggests that probable cause exists. The instant case, however, does not involve facts like those in the cited cases.

Unlike the officers in *Florida*, the officers in the present case did not learn the information supporting probable cause solely from an anonymous tip but instead from another law enforcement agency who had issued a BOLO for Smith. The officers knew that Independence County law enforcement had called Smith's cell phone and that a man had answered. The officers knew from Independence County that this man who answered the phone had refused to put Smith on the

phone, was making threats against Smith, and was stating that he was her "new sugar daddy." The officers also knew that Smith's phone had been turned off. When they encountered the Fryes and Smith, the officers were able to observe the scene and draw their own conclusions as to whether a crime was being committed.

Also, unlike the officers in *Kuehl*, the officers in the instant case did not ignore exculpatory evidence readily available at the scene. The Fryes argue that Defendants should have talked to Smiths' grandmother in Canton, Texas, who would have explained that she sent the Fryes to pick up Smith in Batesville, Arkansas. Smiths' grandmother was not available at the scene of the arrest, but Defendant Ussery did, in fact, speak with Smiths' grandmother on the phone. However, Defendant Ussery at the time had no way to verify who he was speaking with or what she told him was truthful or accurate. Further, Smiths' grandmother could only confirm that she sent the Fryes to pick up Smith in Batesville, but she would not have been able to confirm what happened when the Fryes retrieved Smith and while they were traveling.

As discussed above, both cases cited by the Fryes are not sufficiently analogous to put Defendants on notice that their actions violated the Fryes' constitutional rights. Thus, these cases do not clearly establish that Defendants violated the Fryes' Fourth Amendment rights. Accordingly, the Court finds that Defendants are entitled to qualified immunity as to the Fryes' unlawful seizure claim.

### 2. Denial of Medical Care

The Fryes allege in the Complaint that Defendants were "deliberately indifferent" to the fact that Aleta Frye "was in immediate need of medical care, intervention, and transfer to a medical facility to avoid aggravation or harm to the condition of colorectal cancer." ECF No. 3, ¶ 41(a). They argue Defendants should have allowed Aleta Frye to use the restroom because she told them

that she had colorectal cancer, that she urgently needed to use the restroom, and that she was without full bowel control.  The Fryes state that Aleta Frye was "visibly distressed yet no Defendant made an inquiry or effort to provide care." ECF No. 44., p. 12.  Aleta Frye claims that she was in "extreme physical discomfort and fear of humiliation."  ECF No. 43-2, ¶ 10.  In her deposition, however, she noted that she was able to go to sleep while being transported to the jail.  ECF No. 47-3, p. 8.

The Fryes rely on *Hartsfield v. Coburn*, 371 F.3d 454 (8th Cir. 2004) for the general legal principle that "deliberate indifference arises when officers fail to investigate obvious risks— especially when the person is in custody and unable to seek help independently." ECF No. 44, p. 12.  In *Hartsfield*, the plaintiff alleged that a jail nurse and doctor ignored his repeated complaints of severe tooth pain and that the jail doctor withheld treatment for nonmedical reasons.  The Eighth Circuit Court of Appeals found that a question of material fact existed as to whether the defendants were deliberately indifferent to the plaintiff's serious medical needs when they failed to arrange for dental treatment until about six weeks after the plaintiff's written request for it, causing him to suffer further pain and infection.  The facts in *Hartsfield* are not similar to the facts in the present case.

Despite it being their duty to do so, the Fryes have not identified a sufficiently analogous case that would put Defendants on notice that refusing to allow Aleta Frye, an arrestee, to use the restroom prior to her transport to jail violated her Fourteenth Amendment rights.  Thus, the Court cannot find that the Fryes have shown Defendants violated a right that was clearly established.  Accordingly, the Court concludes that Defendants are entitled to qualified immunity as to the Fryes' denial of medical care claim.

### D. State Law Claims

The Fryes allege a state law malicious prosecution claim and claims under the ACRA. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it had original jurisdiction. *Mountain Home Flight Serv., Inc. v. Baxter Cnty., Ark.*, 758 F.3d 1038, 1045 (8th Cir. 2014). Here, the Court finds that the claims over which it had original jurisdiction, the § 1983 claims, should be dismissed. Thus, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims.

### IV. CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 35) should be and hereby is **GRANTED**. Plaintiff's § 1983 individual and official capacity claims are **DISMISSED WITH PREJUDICE**. Further, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims, and these claims are **DISMISSED WITHOUT PREJUDICE**. A judgment of even date shall issue.

**IT IS SO ORDERED**, this 15th day of September, 2025.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge